CHICAGO—FIRST DISTRICT—MAY, 1909.    261

Garrity v. Chicago Car Seal and Manufacturing Co., 148 App. 261.

## Kate Garrity, Appellee, v. Chicago Car Seal and Manufacturing Company, Appellant.

### Gen. No. 14,450.

MASTER AND SERVANT—*when question of assumed risk determined by the jury.* Held, under the evidence, that it was for the jury to determine whether the plaintiff had assumed the risk arising from the use of a defective machine, it appearing that the plaintiff knew that the machine was defective, but it not appearing that the knowledge of the plaintiff extended to the particular danger which resulted in injury.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed May 3, 1908.

**Statement by the Court.** This is an appeal from a judgment of the Superior Court of Cook county in favor of the appellee, who was plaintiff below, against the appellant, who was defendant below. The judgment was for $2,000 and was entered on the verdict of a jury for that amount in an action on the case for personal injuries.

The plaintiff's declaration was in three counts. In the first count it alleged that the defendant corporation allowed a machine, which it owned and operated for cutting strips from sheets of tin, to become so out of order that it repeated,—that is, set its knives in motion without the pressure of the operator on the treadle,—and then ordered the plaintiff, who was in its employ and who did not know that the machine was thus out of order, to operate said machine, with the result that the machine started of itself without the foot of the plaintiff on the treadle, and cut off a part of two fingers of the plaintiff's right hand.

The second count described an instrument called a clip attached to said machine, and alleged the duty of the defendant to keep the clip in order, so that said clip would draw back from between the knives of said

machine the last strip of tin cut from said sheet. It then alleged that the defendant neglected the duty and permitted the clip to be so out of order that said clip would not hold sheets of tin tightly, and would not draw back the last strip of tin cut from said sheets, but would slip from said strip of tin without drawing said strip back. The plaintiff, the count alleged, did not know the clip was out of order, but the defendant, knowing that the machine and clip were out of order, directed her to work on said machine and to use the machine for cutting sheets of tin into strips and to use the clip to hold said sheets of tin. While the plaintiff, in the exercise of due care and diligence, was obeying the order, she tried to draw out the last strip of tin cut from said sheet. The clip slipped from said strip, and the plaintiff, while removing with her fingers said strip of tin, had the first and second fingers of her right hand maimed and injured by said machine starting suddenly.

The third count alleged the duty of the defendant to keep the machine in repair so that it would not start of itself, and that its knives should not move until the operator pressed the foot treadle, and its further duty to provide a clip for the machine which should hold the last strip of tin tightly and enable the operator to withdraw the last strip of tin from the knives when cut. It further alleged the neglect of both these duties by the defendant, and its permitting both machine and clip to become out of order so that the knives would come together without the treadle being pressed, and the clip would not tightly hold the sheets of tin and would not withdraw the last strip of tin from the knives when cut. The defendant, knowing of these conditions, ordered the plaintiff, who did not know of them, to work on the machine, and while obeying, the plaintiff tried to withdraw the last strip of tin cut from a sheet of tin; the clip slipped from said strip and plaintiff was obliged to use her fingers to remove said strip. While she was removing it with her fingers,

which it was perfectly safe to do while said machine was at rest, said machine suddenly started, against the will of the plaintiff, and cut off portions of the first and second fingers of her right hand.

To this declaration the defendant pleaded not guilty and the issues were submitted to a jury. After the evidence on both sides was concluded a motion for a peremptory instruction, made by defendant, was denied. The verdict before noted followed, and after a motion for a new trial and a motion in arrest of judgment had been overruled, the judgment herein appealed from was entered. The assignments of error complain that the verdict is against the law and the evidence, that the damages are excessive, and that the trial court erred in rulings on evidence and rulings on instructions.

FRANK M. COX, for appellant; MORSE IVES, of counsel.

DANIEL V. GALLERY, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The evidence in this case shows clearly that the machine by which the plaintiff was injured as described in the declaration had been out of order for years. Sometimes the springs would weaken and sometimes the clutch, so-called, would become loose. Either condition made the machine likely to "repeat," that is, after the foot of the operator had been removed from the treadle which set the machine in motion, the knives would fly up and down several times automatically. The appellant knew of this defective condition, for the attention of its machinist had been often called to it. That such a condition of machines like this is not an unusual one, but is always dangerous, may be said to be a matter of common knowledge.

The contention is made by the defendant that the machine was not out of order. This contention is

based on the testimony of the machinist for the defendant company, who operated the machine for fifteen minutes after it had cut the plaintiff's fingers off, and said it did not repeat and that he found nothing wrong with it; on the testimony of one J. Case, who, as one of the witnesses for the defendant, testified, "always operated every machine that any girl got hurt on," and who accordingly operated the one in question shortly after the accident; and the testimony of a mechanical expert (Bergman) that "he knew of no possible condition that might exist in that press that would cause it to voluntarily repeat once or twice and then stop itself, and work all right for awhile."

But despite this testimony, the stubborn fact remains that the machine was certainly out of order, that it did "repeat," starting automatically, and that it did cut a part of the plaintiff's fingers off.

The strength of the defendant's case does not lie in the denial of the defective condition of the machine or of the want of knowledge on its part that the machine was defective, but in the contention that the plaintiff too knew this, and assumed the risk. It is certain that the plaintiff did know that the machine was defective and had had long experience with it, an experience running over several years. It is a harsh application of the doctrine of assumed risk to hold that a woman, even though of mature age and intelligence, is prevented from recovery for an injury resulting from being specially set to work by her foreman on a defective and dangerous machine, known by the employer to be defective and dangerous, because the employe too knew and feared the danger. However, though such a condition too often means the alternative of losing the employment or incurring the danger, the law does hold firmly to the proposition that where the order, although specific, is to do usual work in the ordinary line of the employe's duty, the employe assumes the risk of all dangers or defects

with which he is familiar. Still, under all ordinary circumstances the question of the assumption of risk is for the jury under proper instructions, and it was left to the jury in the present case, under instructions which we think correct, such as VI, VII, XVII and XX.

But it is said that the verdict and judgment as rendered were against the weight of the evidence, if the jury, as it was bound to do, assumed the legal doctrine to be laid down accurately in these instructions.

We think that the defendant's citations fail in point and are distinguishable by this following consideration:

Knowledge that the machine was dangerous and defective having been brought home to the defendant who owned, controlled and operated the machine, the jury could rightfully attribute to it knowledge of all its dangers and the exact character of its defects. Since it knew that the machine was dangerous and defective and ordered its use nevertheless by its employes, it cannot be heard to say that it did not know that its defect was such that it might "repeat," as it did, some time after the operator's foot had been removed from the treadle.

But on the other hand, it was proper for the jury to consider the actual extent of the familiarity or knowledge of the employe with the danger or defect, or to put it in another form, the actual extent of the danger of which she had knowledge and familiarity. No knowledge of any greater risk than the evidence showed she actually had knowledge of, need be imputed to her. It was proper for the jury to consider from the evidence what that was. The jury were told that if they believed that the risk or danger which resulted in the accident was obvious and patent, the plaintiff could not recover. They evidently found that it was not obvious or patent, and we cannot disturb their finding, if for no other reason than that they had before them for examination and demonstration the machine itself, which we have not. Repeatedly

the witnesses are noted to have "indicated" on the machine and otherwise, matters which we cannot follow exactly from the record, but from the testimony, indications and demonstrations, the jury evidently believed that the defect which caused the machine to "repeat" and the knives to fall was not obvious or patent to the plaintiff.

But it is said that the evidence showed her to have actual knowledge of the defect and of the danger which it involved. This was also left to the jury under the instructions, and here it is that the question of the weight of the evidence becomes acute.

The plaintiff claims that the evidence shows only that, in the language attributed to the trial judge in the appellant's brief, she knew that the machine "was liable to repeat, but did not know it was liable to repeat under the circumstances under which it did repeat. She did not know it would repeat after it had once stopped."

We think this distinction fairly taken. There was evidence tending to show that her experience had been that unless the machine "repeated" immediately after her foot was removed from the treadle it would not repeat at all, and evidence tending to show that before the accident she exercised the care which she deemed sufficient by waiting for a brief space after removing her foot from the treadle for "the repeating" which she had reason to fear, and only put her fingers near the knives when she supposed that danger was no longer to be feared. The supposition proved contrary to the fact, but the question for the jury was, did the evidence show her to have or place her under the presumption of having knowledge to the contrary. The jury answered the question in the negative. We shall not disturb their verdict.

The question of contributory negligence was also for the jury. The defendant insists that it was contributory negligence for the plaintiff to put her fingers beneath the knives; that she should have used a stick

or hook. Had the machine not been defective, there would have been no danger in putting her fingers under the knife.

As the trial judge wrote on the margin of "Instruction XVI" when refusing it as tendered by the defendant, "The danger was not from putting fingers under knife, but from machine repeating. There was no danger from a good machine." The jury evidently thought the same way.

This leaves only the matter of instructions to be considered. We do not consider that there is any error in Instruction A on the measure of damages. The argument of defendant's counsel that the jury could have been misled to suppose that they could consider any injuries except those sustained by reason of the occurrence involved in the suit, does not seem to us sound.

Instruction XIV was modified so as to make it unobjectionable and given.

Instruction IX was properly refused, for the reason that under the circumstances of this case it might be misleading. It directed a verdict for the defendant if the plaintiff "knew of the liability of the machine to repeat," but, as the trial judge in effect noted on it in refusing it, the plaintiff might have known of the liability of the machine to "repeat" under certain conditions and not known that it had that liability under others.

Instructions X and XII and XVIII were covered by those which were given.

Instruction XVI was as follows:

"If you believe from all the evidence that plaintiff before she was injured, knew, understood and appreciated the danger of having her fingers under the knife when the knife came down, and that it was unnecessary for her to do so in performing her work, then it is immaterial from what source plaintiff acquired this information as to the danger, whether from her own actual experience and observation in operating the machine or otherwise."

That this proposed instruction was unnecessary and misleading in the view of the trial judge was shown by his comment on it in refusing it as shown by the record: "The danger was not from putting fingers under knife, but from the machine repeating. There was no danger from a good machine. It might not have been necessary for plaintiff to have put her fingers under the knife, and still in the exercise of ordinary care she might have thought so."

We think this not an inapt comment, and that it implies a sufficient reason for refusing the instruction.

The damages are large, but we do not consider them excessive, nor is it so argued.

The judgment of the Superior Court is affirmed.

*Affirmed.*